In the Matter of the Application of MARIE D. MATTHEWS for a Determination of the Validity and Effect of Her Election as a Surviving Spouse upon the Will of JOHN MATTHEWS (Sometimes Known as JOHN MATTHEWS, JR.), Deceased.*

MARIE D. MATTHEWS, Appellant; THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Executor and Trustee, etc., of JOHN MATTHEWS, Deceased, and Others, Respondents.

Second Department, July 1, 1938.

* Revg. 164 Misc. 578.

*Edwin W. Cooney* [*Edward L. Hunt, Jr.*, and *William T. Maday* with him on the brief], for the appellant.

*Thomas A. Ryan* [*William Parsons* with him on the brief], for respondent The Chase National Bank of the City of New York, as executor and trustee of the estate of John Matthews, deceased.

*Winfield L. Morse*, for the respondents Elma Matthews and others.

*Thomas K. Patterson*, respondent, special guardian for infants herein.

TAYLOR, J. The appellant, testator's widow, petitioned (Surr. Ct. Act, § 145-a) for a determination that she might elect, pursuant to section 18 of the Decedent Estate Law, to take her intestate share of the estate in lieu of testamentary provisions for her benefit. Ultimately, subsequent to the ruling in *Matter of Clark* (275 N. Y. 1), the learned surrogate determined that she was not entitled to elect (*Matter of Matthews*, 164 Misc. 578).

The decree appealed from in effect adjudged that the will contains a provision giving to the surviving spouse an absolute legacy of $2,500, and also a provision for a trust for her benefit for life of a principal of more than the excess between that sum and her intestate share. (Dec. Est. Law, § 18, subd. 1, ¶ [d].) It determined also that no right of election whatever exists in the appellant to take any share of the estate as in intestacy, and that her petition should be denied and dismissed. The effect of this ruling is that the will provided benefits for the appellant by way of a trust recognized under section 18 as sufficient to deprive her of any right of election.

The decedent died June 13, 1935. Section 18, as it then read (Chap. 229 of the Laws of 1929, as amd. by chap. 562 of the Laws of 1931 and chap. 650 of the Laws of 1933), is applicable. Paragraph (h) of subdivision 1 of section 18 (added by Laws of 1936, chap. 234) is without application. It is not retroactive. (*Matter of Bommer*, 159 Misc. 511, 518; *Dalziel* v. *Rosenfeld*, 265 N. Y. 76,

79; *Feiber Realty Corp.* v. *Abel,* Id. 94, 98, 99.) Paragraph (h) took effect " immediately " (April 3, 1936), which excludes " the idea that it should have any retrospective operation or effect." (*Matter of Miller,* 110 N. Y. 216, 223, 224.) The appellant's property rights vested as of the date of decedent's death. (*Westervelt* v. *Gregg,* 12 N. Y. 202, 211, DENIO, J.)

Section 18 gives to the appellant a perfect right of election to take her intestate share of the estate (Dec. Est. Law, § 83, subd. 3), save and except as such right might be limited or withdrawn by provisions of the various paragraphs of subdivision 1 of section 18 as it read on June 18, 1935. Whether the widow is deprived of her right to claim her intestate share depends upon whether the will itself provides her with what the statute makes the equivalent. (*Matter of Byrnes,* 260 N. Y. 465, 470; *Matter of Clark, supra.*)

This case requires only the application of paragraph (d) of subdivision 1, of section 18, which unambiguously limits or excepts the right of election as follows:

" (d) Where the will contains an absolute legacy or devise, whether general or specific, to the surviving spouse, of or in excess of the sum of twenty-five hundred dollars and also a provision for a trust for his or her benefit for life of a principal equal to or more than the excess between said legacy or devise and his or her intestate share, no right of election whatever shall exist in the surviving spouse."

The testator died without issue. He left him surviving his widow, the appellant, and his mother, a brother, and four sisters as his only next of kin. By his will he bequeathed $2,500 and certain minor articles of personalty to his widow, and $1,500 together with his remaining personal effects, jewelry and books, to his brother, Charles Matthews. He appointed the Chase National Bank of the City of New York, " more particularly under the personal supervision of Mr. George E. Warren, now one of its Vice presidents," as executor and trustee. In the fifth clause thereof he devised and bequeathed all the rest, residue and remainder of his estate in trust, to collect the income therefrom and " to pay the net income in instalments, at such periods as the said George E. Warren may deem advisable in his discretion, in equal shares to my beloved wife, Marie Dalloy Matthews, and my beloved mother, Elma Matthews, during their natural lives; provided, however, that if my wife, Marie Dalloy Matthews, should predecease my mother, Elma Matthews, the Trustee shall pay my wife's share of the income to my mother, Elma Matthews, for the remainder of her life; if, however, my mother, Elma Matthews, shall predecease my wife, then the Trustee shall divide the principal

of the trust *res* into two (2) equal shares, one-half (1/2) to be held in trust by the said Trustee, the income to be paid to my wife, Marie Dalloy Matthews, for her life; and the said Trustee shall distribute the other half of the said principal equally to my brother, Charles Matthews, and my sisters, Florence, Adelaide, Virginia and Helen, share and share alike; and in the event that any of these aforesaid brother and sisters should predecease my wife, then his or her children, or if there be no children, heirs, shall take the same share that their ancestor would have taken if alive, to wit: *per stirpes.* Upon the death of my mother and wife, the trust shall terminate in its entirety, and I direct the Trustee to divide the said principal of the trust *res* among all my aforementioned sisters and brother, share and share alike; provided, however, that should any of my sisters and brother predecease my mother or wife, then his or her share shall go to his or her children, if living, or if dead, then to the heirs of said brother or sister [*sic*] in such proportion as if [*sic*] the ancestor, if alive, would have taken, to wit: *per stirpes.*"

This provision plainly created a single trust for the benefit of his widow and mother, each of whom, while both lived, was entitled to receive one-half of the net income thereof. The trust *res* was to remain intact during that period. It was only to be divided into two parts upon the death of the mother. If the widow predeceased the mother, the whole income thereafter was to be paid to the mother for life. If the mother predeceased the widow, the latter thereafter during life was to receive one-half of the income, the other half being payable to the brother and sisters of the testator.

Concededly, if the will in its provisions for the widow contained only clause fifth above quoted, she would have no right of election. It contains, however, other provisions relating to and affecting those of clause fifth, namely in its clauses sixth, seventh and eighth, as follows:

" *Sixth.* It is my intention that the Trustee in the discretion of the said George E. Warren shall have full power to determine what part or parts of the trust *res* shall be income and what part or parts shall be principal.

" *Seventh.* I hereby direct that all taxes, both Federal and State, of whatsoever kind and nature, shall be paid by the said Trustee and Executor out of the income of the trust *res*, and the same shall not be amortized against the principal.

" *Eighth.* Because of the great confidence I have in the said George E. Warren, I hereby grant him the power, in his absolute discretion, to pay part of the principal, in an emergency, to my wife and/or mother, and the determination of whether such emergency exists, shall be in the discretion of said George E. Warren."

The ninth clause contains the testator's " guiding request " that the trustee retain or invest in certain specific non-legals. (*Vide Matter of Clark, supra,* interpreting *Matter of Curley,* 269 N. Y. 548, affg., without opinion, 245 App. Div. 255.)

Upon this appeal the appellant makes no claim that the seventh clause, relating to the payment of " all taxes, both Federal and State, of whatsoever kind and nature," out of the income of the trust *res,* has a bearing on the question of the widow's rights here involved. The appellant, however, in effect does assert that clauses sixth and eighth have such bearing and make secure to the appellant her right of election under section 18.

Clause eighth (*supra*) is potentially destructive, wholly or in part, of that trust *corpus* which the statute (Dec. Est. Law, § 18, subd. 1, ¶ [d], *supra*) clearly contemplates shall be the basis of the widow's income during her life. Clause sixth is not thus destructive; for although therein Warren is accorded " full power to determine what part or parts of the trust *res* shall be income and what part or parts shall be principal," he would be compelled in equity to exercise that power and his broad discretion in connection therewith in a way " genuine and not arbitrary." (*Matter of Clark, supra,* at p. 5.) Therefore, he could not lawfully declare that to be income which was principal, or *vice versa.* Clause eighth, however, is in a different legal category; and is fraught with possibility of reduction of that *corpus* which the statute contemplates shall not be reduced by testamentary provisions, if the widow is to be deprived of her election. That clause, when read in connection with clause fifth, fails to assure to the widow throughout life the enjoyment of income from a principal sum contemplated by Decedent Estate Law, section 18, subdivision 1, paragraph (d). (*Matter of Byrnes, supra.*) It embodies valid testamentary directions. (*Matter of Briggs,* 101 Misc. 191, 197; modfd., 180 App. Div. 752, and 223 N. Y. 677. See, also, *Stanley* v. *Payne,* 65 Misc. 77, 82; Real Prop. Law, § 131.) It is not the court's function to rewrite clause eighth. (*Dreyer* v. *Reisman,* 202 N. Y. 476, 480.) The eighth clause grants to Warren in his absolute discretion (1) " the power * * * to pay part of the principal, in an emergency," to the testator's " wife and/or mother; " and (2) like absolute power in his discretion to determine " whether such emergency exists." While both the widow and the mother live, that power, if exercised, will affect the widow detrimentally by reducing the corpus below what the statute plainly contemplates as the amount of principal upon which the widow shall receive income. That power is resident exclusively in Warren. In its implications in this phase, the will even contemplates, during their joint lives, in an emergency, the possibility of payment to the

mother of the entire corpus, leaving nothing upon which income might be earned thereafter for the widow. Therefore, as indicated, it is potentially destructive of the corpus which the widow is entitled to have maintained for her benefit. She is not deprived of her right of election.

The doctrine of *Matter of Clark (supra)*, involving " unrestricted discretion " of trustees to appraise and evaluate properties, in which case our highest court declared that the provision there involved was not an attempt to perpetrate a fraud and that " The surrogate has jurisdiction to direct an equitable distribution and valuation of the assets so as to insure to the widow her intestate share," is not applicable, in our opinion, to the legal situation presented by clause eighth. An extension of that doctrine to this case would mean the rewriting of the will of the testator.

In another contention urged by the respondents, they fail to demonstrate that the appellant should be deprived of her right of election. On December 16, 1935, the appellant served upon the respondent-executor her duly executed notice of election. Thereafter, on January 29, 1936, she commenced this proceeding. During its pendency, on March 28, 1936, Warren executed a document by which he purported to " resign and renounce " the discretionary powers granted to him. This document is a nullity. The statute does not contemplate it, even if we assume it to be lawful otherwise. Its legality is doubtful. (*Vide Chase Nat. Bank* v. *Chicago Title & Trust Co.*, 246 App. Div. 201; affd., 271 N. Y. 602.)

The statute (§ 18, subd. 1, ¶ [d]) is very plain in its mandate that the will shall contain " also a provision for a trust for  *  *  * her [widow's] benefit for life of a principal equal to or more than the excess between said legacy or devise [$2,500 or more] and  *  *  * her intestate share," in order to deprive the widow of such share. Clause eighth, read in connection with clause fifth, demonstrates, as matter of law, non-compliance by the testator with the statute. Warren's " renunciation " (eighth clause) is insufficient to bring about compliance by repairing the testator's error in the will, which cannot be thus repaired. The widow's right of election exists.

Whether a widow has a right of election pursuant to section 18 depends exclusively upon the terms of the will, construed in the light of that statute. A renunciation subsequent to the death of the testator, and in this case after timely notice of her election to take her intestate share had been filed, of powers given to a person by the terms of the will, which powers, if exercised, would or might result in such a depletion of the corpus as would give thereafter

to the widow income on a corpus less than that contemplated by the statute for her benefit, is insufficient legally to deprive her of her right of election under the statute. The renunciation of George E. Warren is in this category, is immaterial, and may not be considered in determining whether the widow has a right to elect.

Other contentions urged by the respondents as militating against the widow's right of election have been considered but are found insufficient to deprive her of that right.

The statute should be liberally construed in the interest of the surviving spouse. (Laws of 1929, chap. 229, § 20; *Matter of Byrnes, supra,* p. 472; *Matter of Bommer, supra.*)

The decree should be reversed on the law and the petitioner's application for a determination that she might elect, pursuant to section 18 of the Decedent Estate Law, to take her intestate share of the estate in lieu of testamentary provisions for her benefit, should be granted, with costs, payable out of the estate, to the appellant and to the respondents filing separate briefs, and matter remitted to the Surrogate's Court for the entry of a decree accordingly.

HAGARTY and CARSWELL, JJ., concur; LAZANSKY, P. J., with whom JOHNSTON, J., concurs, dissents and writes for affirmance.

LAZANSKY, P. J. (dissenting). A will speaks as of the time of the death of the testator. (*Matter of Seymour,* 239 N. Y. 259.) As a general rule, subsequent events may not validate that which, by the terms of a will, is illegal. (*Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 86.) But here Warren was not bound to accept the appointment (*Beekman* v. *Bonsor,* 23 N. Y. 298); and, because of the renunciation, the bare discretionary collateral power (*Hull* v. *Hull,* 24 N. Y. 647) either never became effective, because it was not accepted, or, having become effective, was destroyed *ab initio* on renunciation. (*Albany Hospital* v. *Albany Guardian Society,* 214 N. Y. 435; *Burritt* v. *Silliman,* 13 id. 93; *Matter of Meyer,* 137 Misc. 730.) In either event, the situation was as if no power had been granted. Therefore, the widow's interest in the trust fund could not and cannot be impaired because of the power given to Warren, and she has no right of election under section 18 of the Decedent Estate Law.

It is claimed by appellant that a collateral power such as the one given to Warren may not be renounced. As authority, appellant cites 1 Sugden on Powers ([3d Am. ed.] *pp. 45, 46). After stating that one who has no estate in himself in the land cannot by fine, feoffment or release extinguish the power, because it is but an

authority and no interest, with citation of old English authorities therefor, the author says that the donee of such a power cannot disclaim. No authority for this latter proposition is given.

Appellant, in her brief, also says that the same rule is stated in 1 Tiffany Real Property ([2d ed.] 1103); in 24 Harvard Law Review, 511, by Professor Gray; and in Farwell on Powers (3d ed.), 12.

Professor Gray, speaking of powers simply collateral, merely says that " Such powers, if special, cannot be released." Tiffany and Farwell state that such a power may not be extinguished or destroyed by any act of the donee. The English cases cited by them do not refer to renunciation (as here) or disclaimer, but, on the contrary, refer to extinguishment or destruction by deed of release or by contract not to exercise the power or to exercise it in a certain way. That the English cases cited in the texts of the three authors were referring to a release by transfer or a contract not to exercise the power, and not to renunciation, is indirectly indicated by a statute which changed the law in 1881 (44 & 45 Vict. chap. 41, § 52), by which " A person to whom any power, whether coupled with an interest or not, is given may by deed release, or contract not to exercise, the power."

That the act of the donee referred to in the cases is with respect to the land, is shown by *Baker* v. *Wilmert* (288 Ill. 434; 123 N. E. 627), where it is said: " A power simply collateral cannot be suspended or extinguished by any act on the part of the donee with respect to the land," and *Norris* v. *Thomson's Executors* (19 N. J. Eq. 307) as follows: " But where the power to appoint is given to one who has no estate or interest in the property to be distributed, which is called a power simply collateral, the person entrusted with the power cannot release or extinguish it, but may exercise it notwithstanding any covenant or agreement to the contrary."

That a bare discretionary power may be renounced is indicated in *Hull* v. *Hull* (*supra*).

The rule of powers as to personalty is the same as to realty. (*Matter of Cooksey*, 182 N. Y. 92; *Matter of Moehring*, 154 id. 423; *Matter of Fowles*, 222 id. 222, 241, per CRANE, J., dissenting on other questions.)

If a man may refuse a devise, he may refuse to assume the duty sought to be placed upon him through a power. A testator may not force his will upon one who does not wish to accept his bounty or a testamentary duty. (*Beekman* v. *Bonsor, supra.*) " A man ' cannot have an estate put into him in spite of his teeth ' " (quoted from an earlier case in *Townson* v. *Tickell*, 3 Barn. & Ald. 31; cited in *Albany Hospital* v. *Albany Guardian Society, supra*).

The claim of appellant that she has a right of election is based before this court *solely* on the proposition that Warren's power is effective to impair her interest in the trust fund.

The decree should be affirmed.

JOHNSTON, J., concurs.

Decree of the Surrogate's Court of Nassau county reversed on the law and the petitioner's application for a determination that she might elect, pursuant to Decedent Estate Law, section 18, to take her intestate share of the estate in lieu of testamentary provision for her benefit, granted, with costs, payable out of the estate, to the appellant and to the respondents filing separate briefs, and matter remitted to the Surrogate's Court for the entry of a decree accordingly.